UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80896-CIV-MARRA

CORCEL CORPORATION, INC.,

Plaintiff,

vs.

FERGUSON ENTERPRISES, INC.
LINE-TEC, INC. and AKA SERVICES,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant AKA Services, Inc.'s Motion to Dismiss (DE 16 and 19); Defendant Ferguson Enterprises, Inc.'s Motion to Dismiss (DE 17) and Defendant Line-Tec, Inc.'s Motion to Dismiss and Motion to Adopt Defendant AKA and Ferguson's Motions to Dismiss (DE 25). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Corcel Corporation, Inc. ("Plaintiff" "Corcel") brings this six count complaint against Defendants Ferguson Enterprises, Inc. ("Ferguson"), Line-Tec, Inc. ("LT") and AKA Services, Inc. ("AKA") (collectively, "Defendants"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Ferguson and LT (count one), 18 U.S.C. § 1962(d) against Ferguson and LT (count two), Florida Statutes § § 772.103-104 ("Florida RICO") against Ferguson and LT (count three), 18 U.S.C. § 1962(c) against Ferguson, LT and AKA (count four),  U.S.C. § 1962(d) against Ferguson, LT and AKA

(count five) and Florida Statutes § § 772.103-104 against Ferguson, LT and AKA (count six). The Complaint alleges the following:

Corcel, Ferguson and LT are suppliers of various materials used in the plumbing trade. (Compl. ¶ 3.1, DE 1.) These parties are also business competitors, although Corcel and LT are substantially smaller suppliers who sell primarily in Florida. (Id. at ¶ ¶ 3.2-3.3.) AKA is a prime contractor who competed for construction contracts offered for bid by Palm Beach County. (Id. at ¶ 3.5.)

Palm Beach County regulates the awarding of its contracts by various mechanisms, including the Small Business Enterprise Program, administered by the Office of Small Business Assistance ("OSBA") and guided by the Palm Beach County Code. (Id. at ¶ 3.6.) Under the program, on certain types of contracts, Palm Beach County gives preferences of up to 10% to SBE bidders over non-SBE bidders. (Id. at ¶ 3.7.) The program is designed to provide assistance and enhanced opportunities to small businesses. (Id. at 3.6.) Corcel was a certified Small Business Enterprise ("SBE") between April 28, 2003 through January 7, 2010. (Id. at ¶ 3.6.) LT was certified as an SBE within the same product categories as Corcel from May 17, 2006 through July 2011. (Id. at ¶ ¶ 3.30-3.40.)

In or before 2006, Ferguson and LT, neither of which individually was eligible for SBE certification, formed an enterprise to procure and maintain SBE certification from Palm Beach County for LT. The enterprise was formed to enable LT to receive SBE bid preferences and win project awards, and to enable Ferguson to make sales through LT with SBE bid preferences, "even though LT was a mere conduit who performed no commercially useful business function." (Id. at 3.13.) Ferguson and LT sought SBE certification, from 2006 through mid-2011, by

soliciting false and misleading letters from product manufacturers, preparing false affidavits, and altering and falsifying manufacturers' product packaging slips. (Id. at ¶ 3.14.) To accomplish these acts, Ferguson and LT used the United States mail and interstate wires. (Id. at ¶ ¶ 3.36-3.39.) The OSBA relied on these submissions and approved LT's 2006 application for certification. (Id. at ¶ 3.30.) LT was awarded Palm Beach County contracts when it was not the low bidder and received the award solely based on LT's status as a certified SBE and its utilization of SBE credits. (Id. at ¶ 3.33.) From 2006 through mid-2011, LT was awarded multiple contracts that otherwise would have been awarded to Corcel as the next low SBE bidder. (Id. at ¶ 3.35.) LT was decertified as an SBE with respect to products in July 2011. (Id. at ¶ 3.40.)

In or before 2008, Ferguson, LT and AKA, none of whom individually were eligible for SBE certification individually, formed an enterprise to use LT's SBE certification with respect to products. The enterprise was formed to enable AKA, as prime contractor, to receive SBE bid preference credits for LT's subcontract bids and win construction contract awards for the mutual benefit of the three Defendants. (Id. at ¶ 3.42.) AKA listed LT as an SBE subcontractor/supplier on AKA's construction contract bids, at a time when Defendants knew that LT was not entitled to SBE certification and AKA was not entitled to SBE preference credit for LT's participation as subcontractor. (Id. at ¶ 3.43.) Palm Beach County relied upon the "implied representation" in AKA's bid that LT was an SBE and LT would perform a "commercially useful business function," which is required for certification as an SBE. (Id. at ¶ ¶ 3.8, 3.44.) AKA was awarded a project from Palm Beach County and the prime contractor for whom Corcel submitted a subcontract bid lost the contract, causing Corcel to lose the subcontract worth approximately

3

$500,000.00. (Id. at ¶ 3.46.) AKA obtained bid preferences through the use of the U.S. Mail. (Id. at ¶ 3.47.)[1]

Each Defendant has moved to dismiss and to join in the arguments raised by co-Defendants. Ferguson moves to dismiss on the following grounds: (1) Plaintiff was not directly injured and its injury was not proximately caused by Ferguson's alleged conduct; (2) Plaintiff's claim are time barred and (3) Plaintiff did not plead the fraud claims with particularity. AKA makes the following arguments: (1) there is no RICO proximate causation because Plaintiff alleges harm to a third party; (2) there is no pattern of racketeering activity because LT did not commit any crime and (3) there is no RICO continuity. Finally, LT argues that (1) collateral estoppel prevents Plaintiff from arguing that LT was ineligible for SBE certification and (2) the letters and affidavits submitted by LT were not false.

Plaintiff responds that the Complaint sufficiently alleges proximate cause, direct injury and standing, and that the claims are not time-barred. Additionally, Plaintiff contends it pled the RICO mail and wire fraud predicate acts with the requisite particularity and collateral estoppel does not apply. Finally, Plaintiff states that it properly pled a RICO claim and that claim satisfies the continuity requirements.

II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground

---

[1] The Court notes that with respect to all of the causes of action asserted by Plaintiff relative to the enterprise involving AKA, Plaintiff realleged and incorporated paragraphs 3.33, 3.34 and 3.35 which asserted that Plaintiff was the next low bidder, but lost the contracts due to the use of LT's fraudulently procured SBE.

4

upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering activity includes acts of wire and mail fraud. 18 U.S.C. § 1961(1). In order to establish a federal civil RICO violation under § 1962(c), the plaintiffs "must satisfy four elements of proof: (1)

5

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. "[2] Williams v. Mohawk Industries, Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (quoting Jones v. Childers, 18 F.3d 899, 910 (11th Cir. 1994)) (internal quotation marks omitted).  Civil RICO plaintiffs must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." Id. at 1283.  Injury "'by reason of' . . . implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." Id. at 1287.  "[A] party whose injuries result 'merely from the misfortunes visited upon a third person by the defendant's acts lacks standing to pursue a claim under RICO." Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 906 (11th Cir. 1998); see Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1307 (11th Cir. 2003); see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.")

      Defendants argue that because the alleged fraud directly injured Palm Beach County and not Plaintiff, Plaintiff does not state a claim.  The Court agrees. To understand this ruling, the Court will examine recent RICO cases addressing this issue.

      In Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453-54 (2006), two business competitors, Ideal and National, sold steel mill related products, supplies and services.  Ideal accused National of not charging state sales tax to cash paying customers and alleged it was injured because National would sell its products, supplies and services for less without damaging

---

[2] The elements for a RICO cause of action under federal and Florida law are the same. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1263 (11th Cir. 2004).

its products. Id. at 454.  The Supreme Court held that Ideal could not bring a RICO claim because its injury was not proximately caused by National. Id. at 458 ("The direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result.").  See also G & G TIC, LCC v. Alabama Controls, Inc., 324 F. App'x 795, 797-98 (11th Cir. 2009) (rejecting the plaintiff's argument that it was directly injured by a business competitor who defrauded the government); Boca Raton Comm. Hosp. v. Tenet Healthcare Corp., 502 F. Supp. 2d 1237, 1248 (S.D. Fla. 2007) ("While there is no hard-and-fast rule against allowing a RICO case to proceed simply because the government is harmed by the predicate acts, in post-Anza cases similar to this one, the courts have rejected attempts by aggrieved parties to recover against business competitors for harms directly caused to the government.").

Plaintiff, however, relies upon Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) in opposing the motions to dismiss.  In Bridge, the plaintiff and defendant were bidders on tax liens acquired by a county on certain properties.  To prevent bidders from increasing their bidding opportunities by sending agents on their behalf, the county issued a single-bid-per-parcel rule and required bidders to submit affidavits stating they did not have multiple agents simultaneously bidding at the tax sales. The plaintiff alleged that defendant committed mail and wire fraud by causing its agents to submit false affidavits, thereby obtaining an unfair share of liens which were then conveyed to defendant. According to the plaintiff, this resulted in a deprivation of its fair share of liens.  In holding that first party reliance was not an element of fraud based RICO claims or a prerequisite to establishing proximate causation, the Bridge court relied on the lower courts' findings that the losing bidders, and not the county, were the only

parties injured by the defendant's misrepresentations. Bridge, 553 U.S. at 658. (emphasis in the original). Thus, the Court stated "there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better suited to sue." Id.

      Plaintiff's reliance on Bridge is misplaced. Here, unlike in Bridge, Plaintiff is not the party directly injured by Defendants' alleged fraud. Rather, Palm Beach County is the party directly injured because, as Plaintiff has alleged, the county paid a higher price for the services provided by Defendants as a proximate result of the alleged fraud. ("LT was awarded PBC contracts where it was not the low bidder" Compl. ¶ 3.33; "LT was awarded jobs and contracts with the County because it had a ten percent SBE advantage over the lowest bidder" Compl. ¶ 3.34; "LT was awarded multiple County contracts that otherwise would have been awarded to Corcel as next low SBE bidder" Compl. ¶ 3.35). Thus, to the extent Plaintiff can claim any injury, it is indirect and there are "independent factors that would account" for the indirect injury. Additionally, allowing Plaintiff to sue would create a "risk of duplicative recoveries by plaintiffs at different levels of injury from the violation" and Palm Beach County is the "more immediate victim . . . better suited to sue." See V-Tech Services, Inc. v. Street, 215 F. App'x 93, 96 (3d Cir. 2007) (affirming dismissal of complaint for RICO fraud by minority-owned contractor alleging injury by the defendant's fraud on government regarding use of disadvantaged subcontractors).

      Because the allegations of Plaintiff's complaint demonstrate that Palm Beach County, and

not Corcel, was directly injured by the acts of Defendants, the motions to dismiss are granted.[3] Furthermore, the Court finds that any attempt by Corcel to amend the complaint would be futile. Lastly, the Court declines to exercise jurisdiction over the remaining state law claims in accordance with 28 U.S.C. § 1367(c)(3). See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir.1997); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir.1991).

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant AKA Services, Inc.'s Motion to Dismiss (DE 16 and 19) is **GRANTED** as to all federal claims.

2) Defendant Ferguson Enterprises, Inc.'s Motion to Dismiss (DE 17) is **GRANTED** as to all federal claims.

3) Defendant Line-Tec, Inc.'s Motion to Dismiss and Motion to Adopt Defendant AKA and Ferguson's Motions to Dismiss (DE 25) is **GRANTED** as to all federal claims.

4) All state law claims are **dismissed without prejudice**.

5) The Court will separately enter judgment for Defendants.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of June, 2013.

_____
KENNETH A. MARRA
United States District Judge

---

[3] Given this conclusion, the Court finds no reason to discuss Defendants' other arguments for dismissal.

9