UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Civil No. 12-CV-80896

CORCEL CORP.

                    Plaintiff,

        vs.

FERGUSON ENTERPRISES, INC., LINE-
TEC, INC. and AKA Services,

                    Defendants.

## AMENDED COMPLAINT

**COMES NOW**, Plaintiff, Corcel Corp. ("Corcel"), by and through its undersigned counsel, and for its complaint against the Defendants, Ferguson Enterprises, Inc. ("Ferguson"), Line-Tec, Inc. ("LT") and AKA Services, Inc. ("AKA") alleges as follows:

### I.        PARTIES

1.1     Plaintiff Corcel is a Florida corporation with its principal place of business at 2461 NW 23rd Street, Miami, FL 33142.  At all relevant times, Corcel has done and is doing business in Palm Beach County, Florida.

1.2     Defendant Ferguson is a Virginia corporation with its principal place of business at 12500 Jefferson Avenue, Newport News, Virginia 23602.  At all relevant times, Ferguson has done and is doing business in Palm Beach County, Florida.

1.3     Defendant LT is a Florida corporation with its principal place of business at 241 NW 18th Avenue, Delray Beach, FL 33444.  At all relevant times, LT has done and is doing business in Palm Beach County, Florida.

1.4     Defendant AKA is a Florida corporation with its principal place of business at 13676 Hamlin Blvd., West Palm Beach, FL 33412.  At all relevant times, AKA has done and is doing business in Palm Beach County, Florida.

## II.      JURISDICTION AND VENUE

2.1     This Complaint arises in part under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c).

2.2     This court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

2.3     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants do business in the Southern District of Florida and a substantial part of the events giving rise to the claims stated occurred within the District.

## III.     FACTS

A.     The Parties' Business

3.1     The Plaintiff Corcel and Defendants Ferguson and LT are suppliers of various plumbing supplies, including pipe, valves and fittings, and sell to contractors and others in southern Florida, including Palm Beach County.

3.2     Defendant Ferguson is the largest plumbing wholesaler in North America, and distributes pipe, valves and fittings throughout much of the United States and Canada; Plaintiff Corcel and Defendant LT are substantially smaller plumbing suppliers and sell primarily in Florida.

2

3.3     At all relevant times, Corcel, Ferguson and LT, were in the business of selling, or competing for the sale of plumbing products, including various pipes, valves and fittings ("Products"), purchased and used by the county government of Palm Beach County, Florida ("PBC") for its underground utilities lines.

3.4     The Products include those bearing official NIGP codes 34060 (hydrants); 65846 (ductile iron pipe); 65860 (PVC pipe); 65978 (tubing, fittings); 67070 (valves bronze); 67069 (valves brass and copper); 67075 (valves iron body); 89040 (meter boxes); 89045 (meter fittings); 65973 (saddles, sleeves, straps); and 21045 (meter boxes).

3.5     At all relevant times, Defendant AKA was a prime contractor who competed for construction contracts offered for bid by PBC, which contracts include one or more of the Products as a component part of the contracts.

B.      PBC's Small Business Enterprise (SBE) Program

3.6     PBC has adopted ordinances to provide assistance and enhanced opportunities to small businesses.  Under the Small Business Enterprise Program ("Program"), if a small business meets a series of requirements, including, *inter alia,* annual gross receipts under a stated maximum and a location within the County, it may be certified by PBC's Office of Small Business Assistance (OSBA) as a "Small Business Enterprise" (SBE).  **Exh. A** (Palm Beach County Code §§ 2-80.21 through 2-80.34) (attached).  Between April 28, 2003 and January 7, 2010, Plaintiff Corcel was a certified SBE with respect to the Products.

3.7     Under the Program, on certain PBC direct supply contracts Certified SBE entities have up to a 10% preference over non-SBE entities on PBC's evaluation of bids up to one million dollars.  That is, if the SBE bids no greater than 10% more than the amount bid by the

3

non-SBE, the award goes to the SBE even though the non-SBE's bid is lower.  (PBC Code § 2-80.25).

Furthermore, on PBC construction contracts, where no prime contractor/bidder is an SBE entity, the prime contractor/bidder who has the greatest SBE participation by sub-contractors in excess of 7% will be given a preference over the lowest bidder as long as the bid does not exceed the lowest bid by more than 10% on contracts up to $1,000,000 or, on contracts over that amount, by more than $100,000 plus 3% of the amount over $1,000,000.  (PBC Code § 2-80.25).

3.8     In addition to other requirements and limitations, the applicable PBC ordinances require as a condition of SBE certification and as a condition of receiving SBE bid preferences that the company not be a mere re-seller of product but must also perform a "commercially useful business function."  PBC Code § 2-80.30(a).  "A small business is considered to perform a commercially useful business function when it is responsible for execution of a distinct element of work of a contract and carrying out its responsibilities by actually performing, managing and supervising the work performed.  Businesses who merely act as a conduit do not perform a commercially useful business function and will not be eligible for certification as SBE."  PBC Code § 2-80.30(b).  Businesses that do not perform a commercially useful business function ("CUF") are not responsive to SBE requirements and are not entitled to SBE bid preferences for the purpose of PBC ranking of responsive bidders for bid award evaluation purposes.

3.9     The ordinance specifies several considerations to be applied to determine whether an applicant for SBE certification performs a commercially useful business function ("CUF"), including:

- "whether the business adds a value to the product or service provided;"

4

- "whether the business has a distributorship agreement with the manufacturer of the goods supplied;" and

- "whether the business takes possession of the product or service provided."

PBC Code § 2-80.30(b).

3.10    As part of the application for SBE certification, the small business applicant must submit an affidavit of eligibility attesting to the applicant's eligibility for certification.

C.    Ferguson/LT Enterprise's Scheme to Fraudulently Procure SBE Certification And Bid Preferences

3.11    At all times relevant, Ferguson was not eligible for and did not apply for the County's SBE certification and bid preference with respect to the sale of Products in its own name.

3.12    At all times relevant, LT was not eligible for the County's SBE certification and bid preferences with respect to the Products, and prior to 2006, LT did not apply for such certification.

3.13    In or before 2006, Ferguson and LT, neither of which was eligible for SBE certification individually formed an enterprise ("Ferguson/LT Enterprise"), an association-in-fact.  The purpose of the Ferguson/LT Enterprise was to fraudulently procure and maintain SBE certification from PBC for LT with respect to the Products, to enable LT to receive SBE bid preferences and win PBC project awards and to enable Ferguson to make sales through LT with SBE bid preferences even though LT was a mere conduit who performed no commercially useful business function.

3.14    Ferguson/LT Enterprise's scheme for SBE certification to obtain SBE bid preferences was executed primarily through use of three fraudulent devices: (1) soliciting false

5

and misleading letters from Product Manufacturers; (2) preparing false affidavits; and (3) altering and falsifying manufacturers' Product packing slips.  Repeatedly, from 2006 through mid-2011, Ferguson and LT employed all three devices and repeatedly submitted the resulting false and misleading documents to the OSBA as part of their multiple attempts to obtain and maintain SBE certification for LT.

### 1. *The False and Misleading Letters from Manufacturers*

3.15    As part of the this scheme, Ferguson, through its Municipal Sales Manager, Jason Mueller and LT, through its President, Scott Ellsworth, solicited at least six false and misleading letters from Product manufacturers ("the Letters").  The Letters falsely stated that LT was "an authorized stocking distributor," "authorized distributor" or "authorized reseller" of the respective manufacturers' Products.  **Exh. B** (attached).  The Letters falsely stated that LT was an authorized distributor of the manufacturers' products, and implied it was not merely a conduit for Ferguson's sales.

3.16    In fact, all the manufacturers who authored these Letters admitted to the County's Office of Inspector General (OIG) that they had no relationship with LT whatsoever and had never even sold Products directly to LT.  **Exh. C** (Aug. 31, 2011, OIG Report, at pp 4-6). (attached).  At all relevant times, both Ferguson and LT knew that the Letters were false and misleading.

3.17    Ferguson and LT's purpose in soliciting and obtaining the Letters was to submit them to PBC's Office of Small Business Administration (OSBA) as part of Ferguson/LT Enterprise's Scheme to obtain and maintain SBE certification for LT, by attempting to establish, falsely, that LT was more than a mere conduit, that it was a genuine distributor for manufacturers of the Products and that it performed a commercially useful business function.

3.18    Ferguson and LT caused the Letters to be submitted to the County OSBA as part of LT's application for SBE certification-initially submitted on May 15, 2006.

3.19    Ferguson and LT caused the Letters to be re-submitted to the County OSBA as part of their effort to defeat a decertification proceeding against LT.   The Letters were re-submitted on August 19 and 21, 2008.

3.20    Ferguson and LT caused the Letters to be re-submitted yet again as part of LT's application for SBE re-certification on May 3, 4, 5 and 7, 2010.

2.    *The False Affidavits*

3.21    In addition, as part of its application for certification as an SBE supplier with respect to the Products, on May 15, 2006, LT submitted to the OSBA an affidavit ("2006 Affidavit") signed by LT vice-president Mark Atkins, falsely attesting that it was eligible for SBE certification with respect to the Products.  **Exh. D** (attached).

3.22    At the time it submitted the false affidavit (**Exh. D**), LT knew it was false because it knew it was not eligible for SBE certification as it knew it was a mere conduit for Ferguson's sales, that it performed no commercially useful business function, and that it was not an authorized distributor for any manufacturer of Products.

3.23    As part of LT's fraudulent efforts to maintain its certification as an SBE supplier with respect to the Products, LT submitted additional affidavits signed by its president Scott Ellsworth falsely attesting that LT was eligible for certification or re-certification. Such affidavits were submitted, on January 8, 2007, May 10, 2007, July 17, 2008, August 25, 2008 and January 11, 2010. (Affidavits attached as **Exh. E**).

3.24    At the time it submitted the false 2010 Recertification Affidavit (**Exh. E**), LT knew it was false because it knew it was not eligible for SBE re-certification as it knew it was a

mere conduit for Ferguson's sales, that it performed no commercially useful business function, and that it was not an authorized distributor for any manufacturer of Products.

### 3. *The Falsified and Altered Manufacturers' Packing Slips*

3.25    In addition, as part of the attempt to persuade the OSBA that LT was a distributor of Products, and thus eligible for SBE certification, LT's president, Scott Ellsworth, altered and falsified five separate Product packing slips from manufacturers ("Altered Packing Slips") by whiting out references to the actual distributor, Ferguson. **Exh. F** (attached).

3.26    As altered, the packing slips removed the indication that the sale had actually been made to Ferguson and falsely implied instead that the sale had been made directly to LT. LT knew that the alteration created a false and misleading implication.

3.27    LT then submitted the Altered Packing Slips to OSBA, claiming they were "invoices," as evidence of its status as a distributor.

3.28    LT included the Altered Packing Slips, as part of its application for re-certification to OSBA, submitted January 11, 2010.

### D.    OSBA Relied on Defendants' Fraudulent Submissions.

3.29    The OSBA reasonably relied on Ferguson and LT's false and misleading submissions that were part of LT's applications for certification and re-certification.

3.30    As a direct result of Ferguson and LT's false and misleading submissions to the OSBA, including the Letters and the 2006 Affidavit, the OSBA approved LT's 2006 application for certification on May 17, 2006.

3.31    As a direct result of Ferguson and LT's false and misleading Letters, the OSBA denied the 2008 request for LT's decertification on May 30, 2008.

3.32    As a direct result of Ferguson and LT's false and misleading Letters, the 2010 Recertification Affidavit and the Altered Packing Slips, LT's 2010 application for recertification was initially approved on July 28, 2010.

E.    <u>Defendants' Fraudulent Procurement of SBE Certification Resulted In Multiple Contract Awards for LT</u>.

3.33    As confirmed by the Office of Inspector General's investigation, in multiple direct supply procurement contracts LT was awarded PBC contracts where it was not the low bidder, but received the award based solely on LT's status as certified SBE and its utilization of SBE credits. **Exh. C** (OIG Report, p. 2).

3.34    As confirmed by the State Attorney's Investigation, in 55 instances LT was awarded jobs and contracts with the County because it had a ten percent SBE advantage over the lowest bidder as a direct result of LT's SBE certification. **Exh. G** (State Attorneys Investigation, Hirsch Memo. June 15, 2011, p. 2) (attached).

3.35    From 2006 through mid-2011, as a direct and proximate result of its fraudulent certification as SBE and its improper use of SBE bid preferences, LT was awarded multiple County contracts that otherwise would have been awarded to Corcel as next low SBE bidder.

F.    <u>Ferguson and LT's Use of the Mails and Wires</u>

3.36    Ferguson/LT Enterprise's scheme to fraudulently procure and maintain SBE certification and bid preferences for PBC direct supply contracts was furthered by use of the U.S. mails.

3.37    In furtherance of this scheme, on or about the date noted, Ferguson and LT caused the following to be transmitted by use of the U.S. Mail:

| APPROXIMATE DATE | DESCRIPTION OF ITEM MAILED |
|---|---|
| 25-Aug-08 | Affidavit mailed by LT to PBC OSBA, signed by LT falsely swearing no false statements or material representation on its application for recertification as SBE. |
| 20-Mar-09 | Affidavit mailed by LT to PBC OSBA, signed by LT falsely swearing no false statements or material representation on its application for recertification as SBE. |
| 11-Jan-10 | Affidavit mailed by LT to PBC OSBA, signed by LT falsely swearing no false statements or material representation on its application for recertification as SBE. |
| 30-Apr-10 | Letter from OSBA to LT requesting information and documentation from LT for OSBA to make a determination on LT's eligibility as an SBE for the supply of materials. |
| 23-Jun-10 | LT letter mailed by LT to OSBA indicating it (LT) "buy[s] direct" from manufacturers. |
| 28-Jul-10 | LT letter mailed by LT to OSBA attaching false and/or misleading letters from manufacturers indicating LT had a distributorship agreement with the manufacturers. |
| 4-May-10 | Manufacturer Diamond Plastics' letter to LT mailed by LT to PBC OSBA and procured by Ferguson for the purpose of meeting SBE certification requirements for a "distributorship agreement with the manufacturer" falsely asserting that LT is an "authorized |

10

| | | |
|---|---|---|
| 1 | | distributor" of Diamond notwithstanding fact that Diamond has |
| 2 | | "no sales history" with LT. |
| 3 | 5-May-10 | Manufacturer Sigma's letter to LT mailed by LT to OSBA and |
| 4 | | procured by Ferguson for the purpose of meeting SBE certification |
| 5 | | requirements for a "distributorship agreement with the |
| 6 | | manufacturer" falsely asserting that LT is a "fully authorized |
| 7 | | stocking distributor" of Sigma notwithstanding fact that no |
| 8 | | distributorship agreement existed between LT and Sigma and, in |
| 9 | | fact, SIGMA admitted "Line-Tec has not done any previous |
| 10 | | business with SIGMA." |
| 11 | 16-Mar-10 | Ford packing slip #293230 mailed by LT to OSBA that LT altered |
| 12 | | to remove any reference to Ferguson as the actual distributor. |
| 13 | 16-Mar-10 | Ford packing slip #293875 mailed by LT to OSBA that LT altered |
| 14 | | to remove any reference to Ferguson as the actual distributor. |
| 15 | | |
| 16 | 16-Mar-10 | Ford packing slip #276092 mailed by LT to OSBA that LT altered |
| 17 | | to remove any reference to Ferguson as the actual distributor. |
| 18 | 21-Jan-10 | DeZurik packing slip #291729 mailed by LT to OSBA that LT |
| 19 | | altered to remove any reference to Ferguson as the actual |
| 20 | | distributor. |
| 21 | 21-Jan-10 | DeZurik packing slip #289840 mailed by LT to OSBA that LT |
| 22 | | altered to remove any reference to Ferguson as the actual |
| 23 | | distributor. |
| 24 | | |
| 25 | | |

| | |
|---|---|
| 19-Feb-10 | PBC OSBA letter mailed by OSBA to LT confirming receipt of LT's SBE recertification documents. |
| 28-Jul-10 | PBC OSBA letter mailed by OSBA to LT announcing PBC SBE certification of LT. |
| 21-Dec-10 | PBC Check No. 2606734 PBC mailed to LT in the amount of $17,066.20 that includes $11,917.50 for RFQ #:801010-860/KM improperly awarded to LT for DeZurik valve purchased by LT from Ferguson. |
| 21-Dec-10 | LT check mailed to Ferguson in the approximate amount of $10,725.75 in payment for DeZurik valve on RFQ #:801010-860/KM. |

3.38    Ferguson/LT Enterprise's scheme to fraudulently procure and maintain SBE certification and bid preferences was furthered by the use of interstate wires.

3.39    In furtherance of the Scheme, on or about the date noted, Ferguson and LT caused the following to be to be transmitted by use of interstate wire:

| APPROXIMATE DATE | DESCRIPTION OF ITEM WIRE COMMUNICATION |
|---|---|
| 22-Aug-08 | Fax from LT to OSBA related to recertification and attaching information requested on phone conversation between OSBA and LT on August 21 2008. |
| 22-Jun-10 | Fax from OSBA to LT requesting additional documentation from LT for their SBE eligibility determination. |

| | |
|---|---|
| 23-Jul-10 | Fax and email from OSBA to LT requesting "distributor's agreements" and other documents needed by OSBA to complete LT's eligibility and review process for SBE recertification. |
| 26-Jul-10 | Emails from LT to OSBA and from Ms. Wilhelm of OSBA to Mr. Gray OSBA Manager related to LT's application for SBE recertification. |
| 27-Jul-10 | OSBA email to LT addressing LT's request for SBE recertification and LT obligation regarding "commercially useful business function for Palm Beach County Procurement purposes." |
| 28-Feb-11 | OSBA email to LT requesting copies of Ferguson invoices and packing lists also cancelled check from Ferguson to LT all to make a determination of LT's continued eligibility as a certified SBE. |
| 23-Aug-10 | Fax from LT to PBC of Form P Request For Quotation (RFQ) #:801010-860/KM for contract awarded to LT. |
| 25-Aug-10 | Faxed Purchase Order No. CPO 680 ending in 128 for RFQ #:801010-860/KM in the amount of $11,917.50. |

G.      LT's De-Certification

3.40    Ultimately, LT was de-certified as an SBE with respect to the Products in July 2011.

H.      Ferguson/LT/AKA Enterprise's Scheme to Fraudulently Procure Bid Preferences for AKA on Construction Contracts

3.41    At all times relevant, AKA was not eligible for and did not apply for the County's SBE certification with respect to the Products or otherwise.

13

3.42     In or before 2008, Ferguson, LT, and AKA, none of whom were eligible for SBE certification individually, formed an enterprise ("Ferguson/LT/AKA Enterprise"), an association-in-fact.  The purpose of the Ferguson/LT/AKA Enterprise was to use LT's fraudulently procured SBE certification from PBC with respect to the Products, to enable AKA, as prime contractor, to receive SBE bid preference credits for LT's subcontract bids and thereby win PBC construction contract awards for the mutual benefit of the three Defendants.

3.43     Ferguson/LT/AKA Enterprise's scheme for using LT's fraudulently obtained SBE certification to obtain SBE bid preferences was executed primarily by AKA's listing LT as an SBE subcontractor/supplier on AKA's construction contract bids submitted to PBC on or about February 27, 2008.  At the time the bids were submitted to PBC, each of the Defendants had knowledge that LT was not entitled to SBE certification as it performed no commercially useful function and that, therefore, AKA was not entitled to SBE preference credit for LT's participation as subcontractor.

3.44     PBC reasonably relied on the implied representation in AKA's bid that subcontractor, LT, was a duly certified SBE and that LT would perform a CUF.

I.     Defendants' Fraudulent Use of LT's SBE Certification Resulted in Construction Contract Awards from PBC to AKA to Corcel's Detriment.

3.45     As a direct and proximate result of the Defendants' knowing use of LT's fraudulent SBE certification, AKA was awarded PBC Project No. WUD 08-017.

3.46     As a direct and proximate result of the award to AKA, the prime contractor for whom Corcel submitted a subcontract bid lost the contract and thus Corcel lost the subcontract worth approximately $500,000.

J.      Defendants' Use of the Mails

3.47      Ferguson/LT/AKA Enterprise's scheme for AKA to fraudulently obtain bid preferences for PBC construction contracts was furthered by use of the U.S. mails.

3.48      In furtherance of this scheme, on or about the date noted, Ferguson, LT and AKA caused the following to be transmitted by use of the U.S. Mail:

| APPROXIMATE DATE | DESCRIPTION OF ITEM MAILED |
|---|---|
| 30-Sep-08 | PBC Check No. 2430070 in the amount of $160,836.09 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/18/08 to 8/25/08. |
| 30-Sep-08 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2430070 in the amount of $160,836.09 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/18/08 to 8/25/08. |
| 03-Apr-09 | PBC Check No. 2472015 in the amount of $64,463.18 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department |

| | | |
|---|---|---|
| 1 | | Continuing Construction Contract No. R2008-0769 – Period from |
| 2 | | 7/18/08 to 8/25/08. |
| 3 | 03-Apr-09 | "Periodical Estimate for Partial Payment" related to PBC Check |
| 4 | | No. 2472015 in the amount of $64,463.18 mailed by PBC to AKA |
| 5 | | covering in part substantial material purchases from Ferguson |
| 6 | | directly or from Ferguson through LT as a straw buyer under PBC |
| 7 | | Bid No. 08-017 – Water Utilities Department Continuing |
| 8 | | Construction Contract No. R2008-0769 – Period from 7/18/08 to |
| 9 | | 8/25/08. |
| 10 | 20-Jul-09 | PBC Check No. 2496804 in the amount of $346,837.50 mailed by |
| 11 | | PBC to AKA covering in part substantial material purchases from |
| 12 | | Ferguson directly or from Ferguson through LT as a straw buyer |
| 13 | | under PBC Bid No. 08-017 – Water Utilities Department |
| 14 | | Continuing Construction Contract No. R2008-0769 – Period from |
| 15 | | 6/10/09 to 6/30/09. |
| 16 | | |
| 17 | 20-Jul-09 | "Periodical Estimate for Partial Payment" related to PBC Check |
| 18 | | No. 2496804 in the amount of $346,837.50 mailed by PBC to |
| 19 | | AKA covering in part substantial material purchases from |
| 20 | | Ferguson directly or from Ferguson through LT as a straw buyer |
| 21 | | under PBC Bid No. 08-017 – Water Utilities Department |
| 22 | | Continuing Construction Contract No. R2008-0769 – Period from |
| 23 | | 6/10/09 to 6/30/09. |
| 24 | | |
| 25 | | |

27-Aug-09      PBC Check No. 2506544 in the amount of $658,411.45 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 6/30/09 to 7/29/09.

27-Aug-09      "Periodical Estimate for Partial Payment" related to PBC Check No. 2506544 in the amount of $658,411.45 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 6/30/09 to 7/29/09.

01-Sep-09      PBC Check No. 2507374 in the amount of $38,135.85 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 6/30/09 to 7/29/09.

23-Oct-09      PBC Check No. 2520461 in the amount of $109,174.95 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department

|  |  |  |
|---|---|---|
| | | Continuing Construction Contract No. R2008-0769 – Period from 7/29/09 to 8/29/09. |
| | 23-Oct-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2520461 in the amount of $109,174.95 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/29/09 to 8/29/09. |
| | 04-Dec-09 | PBC Check No. 1504306 in the amount of $141,042.00 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/29/09 to 8/29/09. |
| | 04-Dec-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 1504306 in the amount of $141,042.00 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/29/09 to 8/29/09. |

03-Dec-09            PBC Check No. 2528094 in the amount of $43,881.90 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 7/29/09 to 8/29/09.

16-Dec-08            PBC Check No. 2447248 in the amount of $110,343.83 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 10/23/08 to 11/14/08.

16-Dec-08            "Periodical Estimate for Partial Payment" related to PBC Check No. 2447248 in the amount of $110,343.83 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 10/23/08 to 11/14/08.

26-Mar-09            PBC Check No. 2468795 in the amount of $35,022.17 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department

|   |   |
|---|---|
| | Continuing Construction Contract No. R2008-0769 – Period from 11/14/08 to 12/19/08. |
| 26-Mar-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2468795 in the amount of $35,022.17 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 11/14/08 to 12/19/08. |
| 15-Oct-08 | PBC Check No. 2434225 in the amount of $173,993.03 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 08/04/08 to 09/10/08. |
| 15-Oct-08 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2434225 in the amount of $173,993.03 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 08/04/08 to 09/10/08. |

| | |
|---|---|
| 04-Dec-08 | PBC Check No. 2444482 in the amount of $156,087.51 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 09/10/08 to 10/17/08. |
| 04-Dec-08 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2444482 in the amount of $156,087.51 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 09/10/08 to 10/17/08. |
| 24-Jun-09 | PBC Check No. 2490831 in the amount of $94,052.05 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 04/24/09 to 05/15/09. |
| 24-Jun-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2490831 in the amount of $94,052.05 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC |

| | | |
|---|---|---|
| 1 | | Bid No. 08-017 – Water Utilities Department Continuing |
| 2 | | Construction Contract No. R2008-0769 – Period from 04/24/09 to |
| 3 | | 05/15/09. |
| 4 | 04-Sep-09 | PBC Check No. 2508606 in the amount of $47,416.00 mailed by |
| 5 | | PBC to AKA covering in part substantial material purchases from |
| 6 | | Ferguson directly or from Ferguson through LT as a straw buyer |
| 7 | | under PBC Bid No. 08-017 – Water Utilities Department |
| 8 | | Continuing Construction Contract No. R2008-0769 – Period from |
| 9 | | 05/15/09 to 06/01/09. |
| 10 | 04-Sep-09 | "Periodical Estimate for Partial Payment" related to PBC Check |
| 11 | | No. 2508606 in the amount of $47,416.00 mailed by PBC to AKA |
| 12 | | covering in part substantial material purchases from Ferguson |
| 13 | | directly or from Ferguson through LT as a straw buyer under PBC |
| 14 | | Bid No. 08-017 – Water Utilities Department Continuing |
| 15 | | Construction Contract No. R2008-0769 – Period from 05/15/09 to |
| 16 | | 06/01/09. |
| 17 | | |
| 18 | 03-Sep-09 | PBC Check No. 2508253 in the amount of $13,841.35 mailed by |
| 19 | | PBC to AKA covering in part substantial material purchases from |
| 20 | | Ferguson directly or from Ferguson through LT as a straw buyer |
| 21 | | under PBC Bid No. 08-017 – Water Utilities Department |
| 22 | | Continuing Construction Contract No. R2008-0769 – Period from |
| 23 | | 05/15/09 to 06/01/09. |
| 24 | | |
| 25 | | |

| | |
|---|---|
| 10-Apr-09 | PBC Check No. 2473554 in the amount of $355,144.20 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 02/17/09 to 03/27/09. |
| 10-Apr-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2473554 in the amount of $355,144.20 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 02/17/09 to 03/27/09. |
| 27-May-09 | PBC Check No. 2484105 in the amount of $4,964.70 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 03/27/09 to 04/20/09. |
| 27-May-09 | "Periodical Estimate for Partial Payment" related to PBC Check No. 2484105 in the amount of $4,964.70 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC |

|   |   |
|---|---|
| 1 | Bid No. 08-017 – Water Utilities Department Continuing |
| 2 | Construction Contract No. R2008-0769 – Period from 03/27/09 to |
| 3 | 04/20/09. |
| 4 | 06-Nov-09    PBC Check No. 2523288 in the amount of $162,426.82 mailed by |
| 5 | PBC to AKA covering in part substantial material purchases from |
| 6 | Ferguson directly or from Ferguson through LT as a straw buyer |
| 7 | under PBC Bid No. 08-017 – Water Utilities Department |
| 8 | Continuing Construction Contract No. R2008-0769 – Period from |
| 9 | 03/27/09 to 04/20/09. |
| 10 | 06-Nov-09    "Periodical Estimate for Partial Payment" related to PBC Check |
| 11 | No. 2523288 in the amount of $162,426.82 mailed by PBC to |
| 12 | AKA covering in part substantial material purchases from |
| 13 | Ferguson directly or from Ferguson through LT as a straw buyer |
| 14 | under PBC Bid No. 08-017 – Water Utilities Department |
| 15 | Continuing Construction Contract No. R2008-0769 – Period from |
| 16 | 03/27/09 to 04/20/09. |
| 17 | |
| 18 | 30-Jun-09    PBC Check No. 2492374 in the amount of $59,419.65 mailed by |
| 19 | PBC to AKA covering in part substantial material purchases from |
| 20 | Ferguson directly or from Ferguson through LT as a straw buyer |
| 21 | under PBC Bid No. 08-017 – Water Utilities Department |
| 22 | Continuing Construction Contract No. R2008-0769 – Period from |
| 23 | 05/20/09 to 05/28/09. |
| 24 | |
| 25 | |

30-Jun-09          "Periodical Estimate for Partial Payment" related to PBC Check No. 2492374 in the amount of $59,419.65 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 05/20/09 to 05/28/09.

21-Nov-08          PBC Check No. 2442129 in the amount of $167,825.00 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 10/11/08 to 10/15/08.

21-Nov-08          "Periodical Estimate for Partial Payment" related to PBC Check No. 2442129 in the amount of $167,825.00 mailed by PBC to AKA covering in part substantial material purchases from Ferguson directly or from Ferguson through LT as a straw buyer under PBC Bid No. 08-017 – Water Utilities Department Continuing Construction Contract No. R2008-0769 – Period from 10/11/08 to 10/15/08.

K.     Defendants' Money Laundering

3.49   On or about the dates stated, the Defendants Ferguson, LT and AKA did knowingly engage in the monetary transactions described below.   Each transaction affected

interstate or foreign commerce, and was made by, through, or to a financial institution.  With respect to each such transaction, the Defendants knew each involved criminally derived property of a value greater than $10,000.  Such property was derived from a specified unlawful activity, namely the alleged acts of mail fraud in violation of 18 U.S.C. § 1341, all in violation of 18 U.S.C. § 1957:

| DATE | MONETARY TRANSACTION |
|------|---------------------|
| 30-Sep-08 | PBC Check No. 2430070 $160,836.09 deposited to AKA account No. 2000136853132 at Wachovia Bank |
| 03-Apr-09 | PBC Check No. 2472015 $64,463.18 deposited to AKA account No. 2000136853132 at Wachovia Bank |
| 20-Jul-09 | PBC Check No. 2496804 $346,837.50 deposited to AKA account No. 986574595 at PNC Bank |
| 27-Aug-09 | PBC Check No. 2506544 $658,411.45 deposited to AKA account No. 986574595 at PNC Bank |
| 01-Sep-09 | PBC Check No. 2507374 $38,135.85 deposited to AKA account No. 986574595 at PNC Bank |
| 23-Oct-09 | PBC Check No. 2520461 $109,174.95 deposited to AKA account No. 986574595 at PNC Bank |

04-Dec-09          PBC Check No. 1504306 $141,042.00 deposited to AKA account
                   No. 2000136853132 at Wachovia Bank

03-Dec-09          PBC Check No. 2528094 $43,881.90 deposited to AKA account
                   No. 986574595 at PNC Bank

16-Dec-08          PBC Check No. 2447248 $110,343.83 deposited to AKA account
                   No. 02001024 at PNC Bank

26-Mar-09          PBC Check No. 2468795 $35,022.17 deposited to AKA account
                   No. 2000136853132 at Wachovia Bank

15-Oct-08          PBC Check No. 2434225 $173,993.03 deposited to AKA account
                   No. 2000136853132 at Wachovia Bank

04-Dec-08          PBC Check No. 2444482 $156,087.51 deposited to AKA account
                   No. 2000136853132 at Wachovia Bank

4-Jun-09           PBC Check No. 2490831 $94,052.05 deposited to AKA account
                   No. 986574595 at PNC Bank

04-Sep-09          PBC Check No. 2508606 $47,416.00 deposited to AKA account
                   No. 986574595 at PNC Bank

03-Sep-09              PBC Check No. 2508253 $13,841.35 deposited to AKA account No. 986574595 at PNC Bank

10-Apr-09              PBC Check No. 2473554 $355,144.20 deposited to AKA account No. 2000136853132 at Wachovia Bank

06-Nov-09              PBC Check No. 2523288 $162,426.82 deposited to AKA account No. 986574595 at PNC Bank

30-Jun-09              PBC Check No. 2492374 $59,419.65 deposited to AKA account No. 986574595 at PNC Bank

21-Nov-08              PBC Check No. 2442129 $167,825.00 deposited to AKA account No. 2000136853132 at Wachovia Bank

## IV.   CLAIMS

### COUNT I
RICO:  Participation in Enterprise Through Pattern of Racketeering Activity (Violation of 18 U.S.C. § 1962(c)) (Ferguson and LT)

4.1     Corcel incorporates by reference and realleges as if fully set forth in this Count each of the following paragraphs stated above that are material to this Count I:

- ¶¶ 1.1-1.3 (identification of relevant parties)

- ¶¶ 2.1-2.3 (jurisdiction and venue)

- ¶¶ 3.1-3.4 (description of relevant parties' business)

- ¶¶ 3.6-3.10 (description of applicable PBC SBE program and ordinances)

- ¶¶ 3.11-3.28 (description of Ferguson/LT Enterprise's scheme to fraudulently procure SBE certification and bid preferences)

- ¶¶ 3.29-3.35 (description of Ferguson and LT's fraudulent procurement of SBE certification resulting in multiple contract awards to which they were not entitled)

- ¶¶ 3.36-3.40 (description of Ferguson and LT's fraudulent use of mail and wires; and LT's decertification).

4.2     Defendants, Ferguson and LT, formed the Ferguson/LT Enterprise, an association-in-fact that is a RICO "enterprise" and each Defendant was associated with and participated in the conduct of the affairs of that enterprise.

4.3     The purpose of the Ferguson/LT Enterprise was to procure and maintain SBE certification from PBC OSBA for LT with respect to the Products, to enable LT to receive SBE bid preferences allowing it to win PBC contract awards, and, thereby, enabling Ferguson to make sales through LT, even though the latter was a mere conduit who performed no commercially useful business function.

4.4     The Ferguson/LT Enterprise involved or affected interstate commerce inasmuch as many of the Products Ferguson sold through LT (because of PBC contract awards won through SBE bid preferences) originated outside Florida and thus were in interstate commerce.

4.5     Ferguson participated in the Enterprise's affairs through, *inter alia*, its solicitation of false and misleading manufacturers' Letters with knowledge that LT would use them as part of the multiple efforts to obtain or maintain SBE certification.  Ferguson also participated by selling Products through LT on PBC contract awards LT won because of its SBE bid preference, with knowledge that LT was not entitled to SBE certification or preferences.

4.6     LT participated in the Enterprise's affairs through, *inter alia,* its submission of the Letters, Affidavits and Altered Packing Slips as part of the multiple efforts to obtain or maintain LT's SBE certification.  LT also participated by taking advantage of the SBE preference to win PBC contracts when it knew it was not eligible for the preference.

4.7     Ferguson's participation in the Enterprise's affairs was through a pattern of racketeering activity, including multiple acts of mail or wire fraud in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).  Ferguson solicited at least six separate false and misleading manufacturers' Letters and permitted LT to submit those Letters to OSBA on at least three separate occasions (2006, 2008, and 2010) as part of continuing, related efforts to obtain or maintain LT's SBE certification and accompanying bid preferences.  Ferguson also participated through its knowing participation in monetary transactions affecting interstate or foreign commerce which involved property of a value greater than $10,000 and which was derived from unlawful acts, namely the alleged acts of mail and wire fraud.

4.8     LT's participation in the Enterprise's affairs was through a pattern of racketeering activity, including multiple acts of mail or wire fraud in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).  LT's participation included its preparation and submission of multiple false and misleading documents to OSBA in 2006, 2008, and 2010 as part of its continuing, related efforts to obtain or maintain LT's SBE certification and accompanying bid preferences.  LT also participated through its knowing participation in monetary transactions affecting interstate or foreign commerce which involved property of a value greater than $10,000 and which was derived from unlawful acts, namely, the alleged acts of mail and wire fraud.

4.9     As a direct and proximate result of Defendants' pattern of racketeering activity and violations of 18 U.S.C. § 1962(c), Corcel suffered injury to its business and property,

including but not limited to, its loss of PBC contract awards, and sales and profits that it would have received but for LT's improper bid preferences.

## COUNT II
### RICO: Conspiracy (Violation of 18 U.S.C. § 1962(d)) (Ferguson and LT)

4.10    Corcel incorporates by reference and realleges as if fully set forth in this Count each of the following paragraphs, stated above, that are material to this Count II:

- ¶¶ 1.1-1.3 (identification of relevant parties)

- ¶¶ 2.1-2.3 (jurisdiction and venue)

- ¶¶ 3.1-3.4 (description of relevant parties' business)

- ¶¶ 3.6-3.10 (description of applicable PBC SBE program and ordinances)

- ¶¶ 3.11-3.28 (description of Ferguson/LT Enterprise's scheme to fraudulently procure SBE certification and bid preferences)

- ¶¶ 3.29-3.35 (description of Ferguson and LT's fraudulent procurement of SBE certification resulting in multiple contract awards to which they were not entitled)

- ¶¶ 3.36-3.40 (description of Ferguson and LT's fraudulent use of mail and wires; and LT's decertification).

- ¶¶ 4.2-4.9 (description of Ferguson and LT's violation of 18 U.S.C. § 1962(c).)

4.11    As alleged above, Ferguson and LT have violated 18 U.S.C. § 1962(c).

4.12    It is a reasonable inference from the actions of LT and Ferguson, alleged above, that they had an agreement on an overall objective, namely, to execute a scheme to violate PBC's SBE and bidding ordinances with the goal of letting both Ferguson and LT share the benefits of the SBE preference, even though neither qualified individually in the absence of

misrepresentations.  They agreed on a relationship in which LT would serve as the "front-man" and, through submission of fraudulent documents, apply for SBE certification while Ferguson would support LT in its fraudulent efforts to gain and maintain certification by soliciting false and misleading manufacturers' Letters for LT's use.  When SBE certification allowed LT to use SBE preferences, LT would win contract awards and Ferguson would supply product through LT as a conduit and the Defendants would split the proceeds in some agreed upon manner.

4.13    Defendants each undertook overt acts in furtherance of their agreement and conspiracy.

4.14    As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(c), Corcel suffered injury to its business and property, including but not limited to, its loss of PBC contract awards, and sales and profits that it would have received but for LT's improper bid preferences.

COUNT III<br>
RICO:  Participation in Enterprise Through Pattern of Racketeering Activity (Violation of 18 U.S.C. § 1962(c)) (Ferguson, LT and AKA)

4.15    Corcel incorporates by reference and realleges as if fully set forth in this Count each of the following paragraphs, stated above, that are material to this Count IV:

- ¶¶ 1.1-1.4 (identification of relevant parties)

- ¶¶ 2.1-2.3 (jurisdiction and venue)

- ¶¶ 3.1-3.5 (description of relevant parties' business)

- ¶¶ 3.6-3.10 (description of applicable PBC SBE program and ordinances)

- ¶¶ 3.11-3.40 (description of Ferguson and LT's scheme to fraudulently procure SBE certification and bid preferences)

- ¶¶ 3.41-3.46 (description of AKA, Ferguson and LT's scheme to fraudulently procure bid preferences for AKA on construction contracts from PBC)

- ¶¶ 3.47-3.49 (description of AKA, Ferguson and LT's fraudulent use of mail and money laundering).

4.16    Defendants Ferguson, LT, and AKA formed the Ferguson/LT/AKA Enterprise, an association-in-fact that is a RICO "enterprise" and each Defendant was associated with and participated in the conduct of the affairs of that enterprise.

4.17    The purpose of the Ferguson/LT/AKA Enterprise was to use LT's fraudulently procured SBE certification from PBC with respect to the Products, to enable AKA, as prime contractor, to receive SBE bid preference credits for LT's subcontract bids and thereby win PBC construction contract awards to which they were otherwise not entitled for the mutual benefit of the three Defendants.

4.18    The Ferguson/LT/AKA Enterprise involved or affected interstate commerce inasmuch as many of the Products sold through LT (because of contract awards won through SBE bid preferences) originated outside Florida and thus were in interstate commerce.

4.19    Ferguson participated in the Enterprise's affairs through, *inter alia*, selling Products through LT on PBC construction contract awards AKA won because of LT's SBE bid preference, with knowledge that neither LT nor AKA were entitled to SBE certification or preferences.

4.20    LT participated in the Enterprise's affairs by, *inter alia*, its submission of the subcontract bids as part of AKA's prime construction contract bids for PBC and by implicitly representing to PBC that it was duly SBE certified and thereby taking advantage of the SBE preference to win the PBC construction contracts for AKA when it knew it was not eligible for

the preference.

4.21    AKA participated in the Enterprise's affairs by including LT's subcontract bid as part of its prime contract bid for PBC construction contracts knowing LT was not entitled to SBE certification or preferences and by accepting SBE bid preferences to which it knew it was not entitled.

4.22    The three Defendants also participated in the Ferguson/LT/AKA Enterprise's affairs through a pattern of racketeering activity, including multiple acts of mail fraud in violation of 18 U.S.C. § 1341 (mail fraud), as well as money laundering in violation of 18 U.S.C. § 1957.   The Defendants' knowing participation included their preparation and submission of bids to PBC that falsely represented that LT was duly SBE certified and that AKA was entitled to SBE preferences to the extent of LT's participation.   Each of the three Defendants also participated through their knowing participation in monetary transactions affecting interstate or foreign commerce which involved property of a value greater than $10,000 and which was derived from unlawful activity, namely, the alleged acts of mail and wire fraud.

4.23    As a direct and proximate result of Defendants' pattern of racketeering activity and violations of 18 U.S.C. § 1962(c), Corcel suffered injury to its business and property, including but not limited to, its loss of PBC contract awards, and sales and profits that it would have received but for AKA and  LT's improper bid preferences.

<u>COUNT IV</u>
<u>RICO:  Conspiracy (Violation of 18 U.S.C. § 1962(d)) (Ferguson, LT and AKA)</u>

4.24    Corcel incorporates by reference and realleges as if fully set forth in this Count each of the following paragraphs, stated above, that are material to this Count V:

- ¶¶ 1.1-1.4 (identification of relevant parties)

- ¶¶ 2.1-2.3 (jurisdiction and venue)

- ¶¶ 3.1-3.5 (description of relevant parties' business)

- ¶¶ 3.6-3.10 (description of applicable PBC SBE program and ordinances)

- ¶¶ 3.11-3.40 (description of Ferguson and LT's scheme to fraudulently procure SBE certification and bid preferences)

- ¶¶ 3.41-3.46 (description of AKA, Ferguson and LT's scheme to fraudulently procure bid preferences for AKA on construction contracts from PBC)

- ¶¶ 3.47-3.49 (description of AKA, Ferguson and LT's fraudulent use of mail and money laundering).

- ¶¶ 4.16-4.23 (description of AKA, Ferguson and LT's violation of 18 U.S.C. § 1962(c).)

4.25    As alleged above, Count IV, Ferguson, LT and AKA have violated 18 U.S.C. § 1962(c).

4.26    It is a reasonable inference from the actions of LT, Ferguson and AKA, alleged above, that they had an agreement on an overall objective, namely, to execute a scheme to violate the PBC SBE and bidding ordinances with the goal of allowing Ferguson, LT and AKA to share the benefits of the SBE preference, even though none could qualify individually in the absence of misrepresentations.  They agreed on a relationship in which LT's fraudulent SBE certification allowed AKA to use LT's SBE preferences in its construction contract bids to PBC. The LT SBE preference would permit AKA, as prime contractor, to win construction contract awards from PBC and Ferguson would supply product through LT as a conduit and the Defendants would split the proceeds in some agreed upon manner.

4.27    Defendants each undertook overt acts in furtherance of their agreement and conspiracy.

4.28    As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(c), Corcel suffered injury to its business and property, including but not limited to, its loss of PBC construction contract awards, and sales and profits that it would have received but for AKA and LT's improper bid preferences.

## V.    DEMAND FOR JURY TRIAL

5.1    The Plaintiff hereby requests a trial by jury on all issues so triable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, having fully set forth its claims against Defendants, Corcel prays for the following:

6.1    For monetary judgment pursuant to 18 U.S.C. § 1964(c) in an amount three times the amount necessary to compensate it for the damages suffered as a result of the described conduct, pursuant to 18 U.S.C. § 1964(c);

6.2    For costs of suit including reasonable attorneys fees, pursuant to 18 U.S.C. § 1964(c);

6.3    For monetary judgment in an amount three times the amount necessary to compensate it for the damages suffered as a result of the described conduct, pursuant to Fla. Stat. § 772.104 (1);

6.4    For court costs and reasonable attorneys fees, pursuant to Fla. Stat. § 772.104 (1);

6.5    For such other and further relief as the Court deems just and equitable.

DATED  this 22nd day of July, 2014.

Ricardo Corona

_____

Ricardo Corona, Esq.
CORONA LAW FIRM, P.A.
3899 NW 7th Street, Second Floor
MIAMI, FLORIDA 33126
Phone: (305) 547-1234
Fax: (305) 637-4834
rcorona@coronapa.com
**Fla bar No. 111333**
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 22, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF System, which will send notices of the electronic filing to the following:

By:  /s/ Ricardo Corona_____

Attorney

William Newton Shepherd
Allison Brown
*Counsel for Ferguson Enterprises, Inc.*
Holland & Knight LLP
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401-3208
(561) 650-8338
Fax: (561) 650-8399
Email: william.shepherd@hklaw.com
Email: Alison.brown@hklaw.com

1

Leonard Scott Feuer, Esq.
*Counsel for Line-Tec, Inc.*

2

Leonard Feuer, P.A.
250 South Australian Ave.,

3

Suite 1400
West Palm Beach, FL 33401

4

Tel: (561) 659-1360
Fax: (561) 249-4100

5

Email: lfeuer@feuerlawfirm.com

6

Chase A. Berger, Esq.

7

BERGER FIRM, P.A.
2410 Hollywood Boulevard

8

Hollywood, Florida 33020
Tel: (954)780-5577

9

Fax: (954)780-5578
Email: chase@bergerfirm.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25