UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-80896-CIV-GAYLES/Turnoff

**CORCEL CORPORATION, INC.**,

    Plaintiff,

vs.

**FERGUSON ENTERPRISES, INC.**,
*et al.*,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** came before the Court upon Defendant Ferguson Enterprises, Inc.'s Motion for Summary Judgment [ECF Nos. 361] and Defendant Line-Tec, Inc.'s Motion for Summary Judgment [ECF No. 357]. The Court has considered the Motions, the parties' Responses and Replies filed thereto, the pertinent portions of the record, and the argument of counsel at the hearing held on October 27, 2015, and is otherwise fully advised in the premises. For the reasons explained below, the Motions are granted as to the statute of limitations. All other arguments are denied as moot.

**I.    BACKGROUND**

    **A.    The Parties**

Plaintiff Corcel Corporation, Inc. ("Corcel"), and Defendant Line-Tec, Inc. ("Line-Tec"), are Florida corporations that have competed for business in Palm Beach County, Florida (the "County"). Defendant Ferguson Enterprises, Inc. ("Ferguson"), a Virginia corporation, has also

done business with the County.[1] Plaintiff and Defendants are suppliers of plumbing supplies, including pipes, valves, and fittings, and sell to contractors and others in southern Florida. Plaintiff and Defendants competed for business with the County related to its underground utilities lines.

The County has adopted ordinances to give preferences for certain contracts to certified small businesses. Under the Small Business Enterprise Program ("Program"), if a small business meets a series of requirements, the County's Office of Small Business Assistance ("OSBA") may certify it as a Small Business Enterprise ("SBE"). The SBE certification, in turn, entitles certain bidding preferences over non-SBE entities in the County. Under the Program, the County may be required to award a contract to an SBE that is not the lowest bidder instead of awarding the contract to a non-SBE that is the lowest bidder. Between certified SBEs, the Program does not provide for a bidding preference.

A business wanting to become an SBE must apply to the County. Once approved for the Program, a business must reapply for the Program every three years. Part of the application and reapplication requirements includes an affidavit that specifically provides for criminal penalties for those who make a false statement or a misrepresentation in their application or reapplication materials.

Ferguson, the largest plumbing wholesaler in North America, is too large to qualify as a County SBE. The County certified Line-Tec as an SBE on May 17, 2006. The County previously certified Corcel as an SBE in 2003 and subsequently decertified it on January 7, 2010. Once Line-Tec became an SBE in 2006, the County no longer gave Corcel bidding preference over Line-Tec.

---

[1] A third defendant in the case, AKA Services, Inc. ("AKA Services"), was voluntarily dismissed with prejudice by the Court's Endorsed Amended Order on July 28, 2015 [ECF No. 356].

In this lawsuit, Corcel alleges two RICO enterprises. In Counts I and II of the Amended Complaint [ECF No. 231], Corcel alleges that Line-Tec and Ferguson worked together to get Line-Tec certified as an SBE when Line-Tec was not eligible for the SBE program. Corcel alleges that Line-Tec submitted false documents in support of its SBE application. Corcel further alleges that once Line-Tec became SBE certified, Line-Tec acted as a conduit for Ferguson to supply parts to the County. In Counts III and IV, Corcel alleges that former Defendant AKA Services joined the alleged conspiracy for Project No. 08-017. In that alleged enterprise, AKA acted as a prime contractor who hired Line-Tec as a subcontractor to meet the County's SBE requirement to receive a bidding preference.

In total, Corcel claims that it was damaged by Line-Tec's lower bid on eleven County contracts [ECF No. 357-26 at 3]:

1. August 2006 – Contract Number 71306-1916/TN
2. August 2006 – Contract Number 71406-1925/TN
3. October 2006 – Contract Number 06-146R/TN
4. June 2007 – Contract Number 60307-1004/TN
5. November 2007 – Contract Number 08-010/TN
6. February 2008 – Contract Number WUD 08-017
7. July 2008 – Contract Number 70708-1072/TN
8. October 2008 – Contract Number 09-006/TN
9. June 2009 – Contract Number 60409-700/KM
10. August 2010 – Contract Number 81010-860/KM
11. November 2010 – Contract Number 102210-67-SS

For Contracts 81010-860/KM and 102210-67-SS, Line-Tec bid higher than Corcel but was

awarded the bid over Corcel due to its SBE preference. [ECF No. 357-26 at 4–5]. For Contract 60409-700/KM, the second lowest bidder—who would have received the contract if Line-Tec had not been SBE certified—was L&L Worldwide, Inc. [ECF No. 360-21 at 2]; [ECF No. 360 at ¶ 39].

### B.  Plaintiff's History with the County's SBE Program

Corcel has a long history of complaints about the County's SBE Program beginning at least in 2005. For example, as early as July 16, 2005, Ray Corona ("Corona"), Vice President of Corcel, contacted Hazel Oxendine, from the Palm Beach County Board of County Commissioners, requesting that the County review "[r]ampant abuse of the SBE program – improperly using 'pass-through' conduits by giant non-SBE distributors National Waterworks and Ferguson." [ECF No. 360-10 at 56]. That e-mail was then forwarded to other County officials two days later. [*Id.*].

More than a year later on October 3, 2006, Corona again contacted County officials by e-mail, asserting that "LineTec should NOT be certified as an SBE 'distributor' [because] LineTec is being set up as a straw *improper conduit* by Big-2 Ferguson." [*Id.* at 54] (emphasis added). Corona argued that "[t]here are legitimate SBE firms that meet all requirements and 'deserve the fruits of their labors' . . . Corcel is one of those firms in spite of the hurdles by the Big-2." [*Id.*].

On November 15, 2006, Corcel submitted a Bid Protest to the County, arguing that Corcel "should be awarded all lots of this contract" because "[s]ubstantial evidence indicates that [Line-Tec] is an improper pass-through conduit for giant distributor Ferguson . . . so we submit it would consequently be improper for the County to give Line-Tec, Inc. and Ferguson an SBE bid preference." [*Id.* at 50]. Corcel further stated that "[s]ubstantial evidence . . . indicates that Line-Tec, Inc. should never have been certified as an SBE." [*Id.*]. Corcel then outlined that evidence

against Ferguson and Line-Tec and requested that Corcel be the properly selected bidder. [*Id.* at 50–53]. In April 2007, Corona submitted a public records request for certain documents related to Line-Tec's County contracts, and then Corona forwarded those documents to the County, asserting that they were "additional smoking-gun evidence that Line-Tec is front/illegal/conduit pass-through for Ferguson" and that "there were folks in the Southern District of Florida indicted, convicted and sentenced for . . . more benign but similar conduct." [ECF No. 76-16 at 7–8].

By September 10, 2007, Corona had identified a possible conspiracy theory involving Defendants in this case. In a Corcel memorandum on that date, Corona stated that Ferguson, AKA, and Line-Tec "are engaged in an ongoing conspiracy to frustrate the County's Small Business Enterprise Program with the purpose of illegally limiting competition and improperly maintain control by the Big 2 of the multi-million dollar sale of underground utility materials." [ECF No. 360-11 at 2]. Corona further claimed that the "conspirators frustrate the objectives of the SBE program by orchestrating an ongoing scheme where . . . SBE firms are used as pass-through conduits that do not perform a Commercially Useful Function." [*Id.*]. Specifically, the memorandum identified Line-Tec as "a contractor recruited by Big 2 Ferguson to be their own exclusive pass-through conduit." [*Id.* at 8].

On February 15, 2007, Corcel filed a mandamus action with the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. In its Amended Petition for Writ of Mandamus, filed October 7, 2007, Corcel requested that the court require the County and the SOBA "to investigate whether Line-Tec is purchasing its materials from Ferguson Industries or other distributors rather than manufacturers, or otherwise not performing a commercially useful business function or otherwise does not meet the eligibility requirements for certification as a

small business" and that the court require the County "to decertify Line-Tec, Inc. as a distributor . . . as it is purchasing its materials from Ferguson Industries or other distributors rather than manufacturers, or is otherwise not performing a commercially useful function, or does not otherwise meet the eligibility standards for certification as a small business." [ECF No. 357-25 at 14–15]. In its Third Amended Petition for Writ of Mandamus, filed March 27, 2008, Corcel requested that the court provide essentially the same relief. [*Id.* at 34–35]. Corcel outlined the numerous times it had alerted the County of the perceived violations by Line-Tec, starting in 2006. [*Id.* at 21–23]. The court conducted an evidentiary hearing, and in the final judgment denying the petition on January 16, 2009, Judge Kenneth D. Stern found "that Line-[T]ec categorically does provide a commercially useful business function, and that Line-[T]ec has been found, through an investigation properly conducted as required by the Code, to be properly certified as an SBE." [ECF No. 357-25 at 4]. Corcel then appealed that ruling, and the Fourth District Court of Appeal affirmed. [ECF No. 360-24].

On December 16, 2008, Tammy K. Fields, Senior Assistant County Attorney for Palm Beach County, wrote to Corona, stating that his "e-mails appear to reiterate the same allegations, and are consuming valuable staff time to respond. . . . It appears futile for OSBA to expend further staff time responding to the same issues over and over. Consequently, this will be the last correspondence you receive from the County addressing the certifications of Line-tec . . . ." [ECF No. 360-8 at 37].

Finally, Corcel took its complaints to the County's Inspector General's Office ("IGO"), which referred the matter to the State Attorney's Office. [ECF No. 360-7 at 36]. The State Attorney's Office investigated allegations that Line-Tec "had possibly committed fraud" against the County through the SBE Program. [*Id.*]. Detective Danielle Hirsch ultimately concluded that

6

probable cause did not exist to charge a crime; nor did Hirsh find evidence to show that Line-Tec was a shell company for Ferguson. [*Id.*]. The Office of the State Attorney issued a memorandum on July 6, 2011, further concluding that no criminal charge could be sustained against Line-Tec's president. [*Id.* at 44].

Plaintiff subsequently filed the instant case on August 22, 2012.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (citation and internal quotation marks omitted). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. ANALYSIS

Plaintiff sued Defendants under 18 USC § 1962(c) ("pattern of racketeering activity") and § 1962(d) (conspiracy to violate § 1962(c)). Defendants argue that they are entitled to summary judgment in their favor because (1) Plaintiff's claims are barred by the four-year statute of limitations period, (2) the doctrine of laches prohibits Plaintiff's claims, (3) Plaintiff should be collaterally estopped because it litigated this issue in Florida trial and appellate courts, (4) there is no basis to seek recovery for attorney's fees incurred prior to the filing of this lawsuit, (5) AKA Services is a necessary party as to Counts III and IV, (6) Plaintiff lacks standing for those contracts where Palm Beach paid more money by hiring Line-Tec, and (7) Palm Beach's SBE Ordinance is unconstitutionally vague and unenforceable against Line-Tec and Ferguson. [ECF No. 361 at 3].[2] Because the Court finds that Defendants prevail on the basis of the statute of limitations, the Court declines to address the remaining arguments.

### A. Four-Year Statute of Limitations

Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Lehman v. Lucom*, 727 F.3d 1326 (11th Cir. 2013). The time period begins "when a plaintiff knew or should have known of his injury." *See Rotella v. Wood*, 528 U.S. 549, 553–55 (2000). It does not matter whether or when a

---

[2] Defendant Line-Tec has adopted Defendant Ferguson's arguments. [ECF No. 433 at 32:7]. Therefore, the Court's analysis will focus on Ferguson's motion [ECF No. 361] and oral argument.

8

plaintiff realized that the injury was part of a pattern of racketeering, even though "it is true as well that a pattern of predicate acts may well be complex, concealed, or fraudulent." *Id.* at 555–56. The period "begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001); *see also Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank*, No. 1:06-CV-2752WSD, 2007 WL 4564133, at *9 (N.D. Ga. Dec. 20, 2007), *aff'd sub nom. Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487 (11th Cir. 2009) ("The civil RICO limitations period runs from the moment a diligent plaintiff discovered or should have discovered an injury to itself, not from the time it discovered the pattern of predicate acts.").

In order to survive a statute of limitations challenge in this case, Plaintiff would have to show that it did not discover its injury in this case until after August 22, 2008, four years prior to the filing of the instant case. The facts show that such an effort would be impossible. The record here is markedly conclusive that, at a minimum, Plaintiff was aware of the central issues in this case, including its alleged injury, on October 3, 2006, when Corona sent an e-mail to the County asserting that Line-Tec was an "improper conduit" for Ferguson. Plaintiff did not assert some speculation of injury or an amorphous rationale for its complaint to the County. Instead, Plaintiff clearly articulated that Corcel—and not Line-Tec—was a "legitimate SBE firm[]" and that Line-Tec should not be certified as an SBE distributor.

Plaintiff was aggressive in its pursuit of convincing the County of Line-Tec's improper certification, including (1) requesting that the County review rampant abuse of the SBE Program by pass-through conduits in July 2005, (2) submitting a Bid Protest on November 15, 2006, (3) seeking mandamus in the Florida Circuit Court in February 2007, (4) appealing that case to

9

the Fourth District Court of Appeal, (5) submitting public records to the County in April 2007 as "smoking-gun evidence" of illegal behavior, (6) drafting a conspiracy theory memorandum in September 2007 regarding the alleged actions of Line-Tec and Ferguson of "illegally limiting competition" in the SBE Program, and (7) having the Inspector General and the State Attorney for the County investigate the matter in 2011. All of these actions clearly demonstrate that Plaintiff realized its purported injury as early as 2005 and, at the latest, October 3, 2006. Accordingly, the statute of limitations in this case expired by October 3, 2010.

### B.  Separate Accrual Rule

In analyzing the statute of limitations in a civil RICO action, the Eleventh Circuit applies the separate accrual rule. "The rule provides that if a new RICO predicate act gives rise to a *new and independent injury*, the statute of limitations clock will start over for the damages caused by the new act." *Lehman*, 727 F.3d at 1331 (emphasis added). The injury suffered must be more than a "continuation of the initial injury" in order to qualify as "new and independent." *Id.* at 1537–38. In other words, "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). The Eleventh Circuit has applied the Ninth Circuit's interpretation of the circumstances that will restart the statute of limitations: "1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) It must inflict new and accumulating injury on the plaintiff." *Lehman*, 727 F.3d at 1331 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)); *see Pilkington v. United Airlines*, 112 F.3d 1532, 1537 (11th Cir. 1997).

Injuries that "naturally flow" from previous acts cannot be considered "separate and independent" from injuries resulting from the previous acts. *See Bivens Gardens Office Bldg.,*

*Inc. v. Barnett Bank of Fla., Inc.*, 906 F.2d 1546, 1551, 1556 (11th Cir. 1990), *abrogated by Rotella v. Wood*, 528 U.S. 549 (2000); *see Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996) (finding that submitting false documents to the bankruptcy court, concealing documents, and falsely testifying in the bankruptcy court were not "new and independent" acts, but rather "part of the same corporate reorganization/bankruptcy scheme" alleged by plaintiff's RICO complaint that had accrued outside the four-year statute of limitations); *see also Ward v. Dickinson Fin. Corp. II*, No. 7:14-CV-8 HL, 2015 WL 1020151, at *11 (M.D. Ga. Mar. 9, 2015) (finding that the alleged injury sustained each time the plaintiff was charged an overdraft fee was not a "new and independent injury," but rather "part of a continuous injury resulting from the single fee-collecting scheme"). In *Bivens*, the court found that the plaintiff's RICO claim of wrongful takeover of a limited partnership was barred by the statute of limitations, as the plaintiff was aware of those injuries and his entitlement to RICO claims more than four years prior to filing suit. *See Bivens*, 906 F.2d at 1555. However, the court allowed RICO claims for mismanagement of partnership assets and for sale of the partnership's hotel to proceed because they were "new and independent" acts that did not "naturally flow" from the time-barred claim for wrongful takeover of the partnership. *Id.* at 1556.

To illustrate why the separate accrual rule does not apply to Plaintiff's claims in the instant case, the Court looks to two Eleventh Circuit cases that have considered the rule. In *Pilkington*, nine non-striking pilots for United Airlines filed RICO claims against an airline association and the association's executive council. *Pilkington*, 112 F.3d at 1533. The pilots alleged that they experienced harassment by the association beginning in May 1985, and continuing through the time of the lawsuit, for working through the association's strike. *Id.* at 1534. The four-year statute of limitations appeared to bar their RICO claims as the limitations

period began to accrue when the pilots acknowledged their injuries in a series of letters mailed more than four years before they filed their lawsuit. *Id.* at 1535.

Even so, the *Pilkington* plaintiffs argued that each act of harassment accounted for a new and independent injury under the separate accrual rule, thereby accruing a new RICO cause of action. *Id.* at 1536. The court rejected that argument, finding that "[t]he injury suffered by the plaintiffs has been a continuation of the initial injury that resulted from the harassment. With each act of harassment the adverse impact on the plaintiffs' job performance may accumulate[;] however, the injury is not *new and independent*." *Id.* at 1537–38. The court found that the "injury allegedly suffered by the plaintiffs . . . was not *unfamiliar, strange, or different*. It was the *same injury* that ha[d] been accumulating since 1986." *Id.* at 1538 (emphasis added). "Stated another way, the injuries allegedly suffered after suit was filed in 1992 are *merely recharacterizations and continuations* of the same injuries previously alleged to have been suffered since 1986." *Id.* (emphasis added).

In *Lehman*, a tax attorney brought a civil RICO complaint against several defendants with respect to their dealings with the probate estate of Lehman's former client. *Lehman*, 727 F.3d at 1328. The defendants subsequently moved for summary judgment based on the expiration of the statute of limitations, arguing that the plaintiff was aware of his injuries more than four years prior to filing suit, when he filed a complaint against the defendants based on allegations of abuse of process and civil conspiracy. *Id.* at 1329–30. The Plaintiff argued that his civil RICO claims were timely under the separate accrual rule. *Id.* The court disagreed, finding "that Lehman has done little more than repackage his 2007 abuse of process complaint" and that "most of Lehman's injuries in the 2011 complaint might as well be cut-and-pasted from the 2007 action." *Id.* at 1332.

Lehman sought to sustain his RICO complaint based on "other new and independent post-September 2007 injuries," including an Interpol Red Notice Alert, dissemination of damaging information in newspapers in December 2007, the shutting down of his websites on February 27, 2009, and the harm to his business reputation on March 3, 2009. *Id.* at 1333. However, the court found that "Lehman labors to recharacterize a continuation of damages as a new and independent act" by "isolat[ing] different points in time . . . in an attempt to salvage his claim." *Id.* A plaintiff "cannot make timely what is untimely and elude the staleness of his injuries." *Id.* at 1333.

Similarly, this Court finds that there was a single, continuous course of alleged injury to Plaintiff—Line-Tec's certification by Palm Beach County as a SBE. Therefore, Plaintiff can find no recourse in the separate accrual rule. New and independent injuries are injuries that do not naturally flow from the initial injury sustained and must be more than a "continuation of the initial injury." *Lehman*, 727 F.3d at 1331; *Bivens*, 906 F.2d at 1551, 1556. In this case, Line-Tec's SBE certification in some instances resulted in Line-Tec's receiving County contracts that may have otherwise gone to Plaintiff. With each contract that Line-Tec won based on the SBE certification, the adverse impact alleged by Corcel accumulated, but it was not new and independent of the original injury—the SBE certification—that is the heart of this claim. The alleged lost contracts are akin to the accumulating harassment in *Pilkington* and the continuation of damages in *Lehman*. Any loss of contracts by Plaintiff to Line-Tec is a direct result of the SBE certification, and those alleged losses "naturally flow" from the County's SBE certification. Plaintiff cannot attempt to "repackage" its previous complaints against Defendants in an "attempt to salvage" its RICO claim in this court. *See Lehman*, 727 F.3d at 1332–33. Additionally, any applications for renewed certification or any attempts to defend its certification would "naturally

flow" from the initial SBE certification. Accordingly, any allegations of subsequent lost contracts cannot be seen as a new and independent RICO injury.

Corcel argues that its complaint only relies on predicate acts that took place after August 22, 2008, and that these are "new and independent" predicate acts sufficient to support application of the separate accrual rule. [ECF No. 376 at 8]. However, the Court does not find this argument convincing. Rather, as in *Lehman*, the Court finds that, by cherrypicking dates, Corcel "labors to recharacterize a continuation of damages as a new and independent act." *Lehman*, 727 F.3d at 1333.[3]

## IV. CONCLUSION

Because the Court's conclusions on the statute of limitations are case dispositive, it is not necessary to address the remaining arguments raised by Defendants, and each of those arguments is denied as moot.

For the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendant Ferguson Enterprises, Inc.'s Motion for

---

[3] Even if the Court were to accept Plaintiff's interpretation of the separate accrual rule, Plaintiff's case would ultimately consist of the potential damages from only four lost contracts. Of the eleven contracts on which Plaintiff bases its damages, only four occurred within the four-year statute of limitations period prior to the filing date of the instant suit: 1) Contract Number 09-006/TN (October 2008); 2) Contract Number 60409-700/KM (June 2009); 3) Contract Number 81010-860/KM (August 2010); and 4) Contract Number 102210-67-SS (November 2010). Given the fact that Plaintiff was aware of the alleged improper SBE certification of Line-Tec as early as 2005, it follows that the date of the injury on these lost contracts is the date of the lost contract bid. *See Lehman*, 727 F.3d at 1331 (a new and independent injury will reset the statute of limitations clock for the damages caused by the new act). Furthermore, because the only basis for damages for Counts III and IV is Contract Number WUD 08-017 (February 2008), [ECF No. 231 at ¶ 3.45], which falls outside the statute of limitations window, Counts III and IV must be dismissed.

As to those four contracts as a basis for damages for Counts I and II, Corcel would only have standing to proceed on one of the contracts: Contract Number 09-006/TN (October 2008). Corcel lacks standing on the other three contracts because the facts now show that it was not the proximately injured party. Corcel has admitted that Line-Tec bid higher than Corcel on Contracts 81010-860/KM and 102210-67-SS in 2010. Therefore, any direct injury that resulted from Defendants' allegedly illegal actions was to the County, and Corcel lacks standing to bring civil RICO claims based on those two contracts. Additionally, Corcel was not the next lowest bidder on Contract Number 60409-700/KM from 2009. Rather, the affected party that would have received that contract but for Line-Tec's allegedly improper SBE certification was non-party L&L Worldwide. Therefore, even under the theory of the separate accrual rule that Plaintiff urges the Court to follow, only damages under Contract Number 09-006/TN from October 2008 would survive defendants' motions for summary judgment.

14

Summary Judgment **[ECF Nos. 361]** and Defendant Line-Tec, Inc.'s Motion for Summary Judgment **[ECF No. 357]** are **GRANTED**. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

    **DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of March, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge Turnoff
       All Counsel of Record